FREEDMAN'S AID & SOUTHERN EDUCATION SOC. v. SCOTT
*et al.*

[87 South. 659.  No. 21322.]

CHARITIES.  *Bill held to show complainant had no right to enforce alleged trust.*

Where a bill in chancery to enforce an alleged trust shows that the trust, if any exist, is for the benefit of a named school, and is not brought in the name of the school, or by its trustees, but by parties living in the community who made some contributions to a fund to buy the alleged trust property for the use of the school, there is no such right in the complainant as will warrant equity in taking cognizance of the suit and rendering a decree, and where such bill is demurred to the demurrer ought to be sustained.

APPEAL from chancery court of Webster county.

HON. A. J. McINTYRE, Chancellor.

Suit by W. R. Scott and others against the Freedman's Aid & Southern Education Society. Decree for complainants, and defendant appeals. Reversed and dismissed.

*McKeigney & Latham,* for appellant.

In this, our reply brief, we respectfully submit that if the alleged trust were such as could be enforced in a court of equity, the amended bill in this case is insufficient, because on the allegations of the bill and the exhibits thereto it appears that the donors were attempting to create a trust for the benefit of Woodland Academy, and we respectfully submit that Woodland Academy is not complaining. The complainants do not present a case by their amended bill of which a court of equity has cognizance.

Counsel for appellees, says that "all the authorities that I have been able to find are uniform in holding that in all proceedings for the enforcement of a charitable trust the same definiteness and certainty of interest is not required to be shown or alleged in order that the complainants shall have the right to maintain their suit as in other classes of trusts. We may concede the position taken as sound law, yet it does not answer position of appellant. Nor does it relieve the complainants of the burden of showing a definitely defined trust which they have a right to enforce in a court of equity. If the purpose of the alleged trust is not clear, certain and definite, then a court of equity cannot enforce or administer it.

Does the amended bill present the case of a trust the terms of which are clear, certain and definite, Complainants in their bill plant themselves upon three several deeds of doubtful meaning. The only intimation of trust is the dubious language "in trust for the use and benefit of Woodland Academy as the Society by its proper officers may deem best," meaning the appellee, as same appears in deed of W. F. Mallalieu exhibited to the bill, and similar expressions in the other deeds exhibited to the bill. There are no directions in either or any of these instruments as to how the land was to be used, this being left entirely in the discretion of appellant, the grantee in these deeds.

The declaration of trust, we respectfully submit, is too indefinite and uncertain for equitable cognizance. *Fineld*

*v. Van Wyck,* 94 Va. 557, 64 Am. St. Rep. 745, and editorial notes thereto.

We re-iterate the point made in our original brief that the amended bill seeks to require appellant to use the land for the purpose of producing revenue to maintain such school as Woodland Academy was, but states no facts tending to show how the land was to be used in contemplation of the parties to produce revenue. And we respectfully submit that the deeds are silent.

Although the bill seeks to require the maintenance of such school as Woodland Academy was, there is nothing in the record, either of allegation or evidence, to show the character, nature or grade of the once was Woodland Academy. It is all vague, doubtful, indefinite and uncertain.

No trust of sufficient certainty and definiteness is shown for the enforcement and performance of which appellees may proceed in equity. To this proposition we respectfully cite the case and notes mentioned above. On the facts, there is no proof in the record that any such entity, either corporate or unincorporated or otherwise as Woodland Academy was in existence when the bill was filed or at the time the Woman's Home Missionary Society, the lessee, of appellant, moved from the premises.

Woodland Academy seems long since to have vanished. Counsel for appellee suggests that a casual reading of the record will disclose the fallacy "of the contention made in our original brief that the evidence fails to prove the allegations of the amended bill," but we believe that a critical reading of the record will disclose the failure of proof.

*T. W. Scott,* for appellee.

Answering first the contention that appellees have no interest in the property that will entitle them to maintain this suit, the allegations of the amended bill, the evidence in the case and the finding of facts by the chancellor show conclusively that this is trust property, nor is this fact seriously controverted by the appellant, and it is also al-

leged in the amended bill and shown by the evidence and findings of fact by the court that it is a trust established for charitable purposes. All the authorities that I have been able to find are uniform in holding that in all proceedings for the enforcement of a charitable trust the same definiteness and certainty of interest is not required to be shown or alleged in order that the complainants shall have the right to maintain their suit as in other classes of trust. But, on the other hand, it seems to be almost universally held that even a remote interest in the creation of or the benefits to be derived from the trust will entitle the complainants to maintain their suit. And especially is this true where the suit is brought for the purpose of requiring the trustee to execute the trust. 22 Encyclopedia of Pleading and Practice, p. 203. The case of *Lowry* v. *Francis*, 2 Yerg. (Tenn.) 534, cited in a note in the same Vol. 22, seems to be a case almost identical with the case at bar. It is there held that some of the inhabitants of a township may sue in equity on behalf of all to prevent a diversion of school funds held in trust.

The bill in the case at bar alleges that this was a fund created by popular subscription and placed in trust in the hands of appellant as trustee for the purpose of maintaining a school on the land in controbersy for the benefit of those residing near the same and any others who desired to attend, and I contend that the complainants or any one of them would have had the right to maintain this suit on the ground, as alleged in the amended bill, that they lived in the community and are interested in and would receive the benefit of the operation of such a school as was contemplated when this trust estate was created, even had they not been contributors to the fund as alleged in said amended bill.

The bill clearly and definitely alleges that this land was purchased with a fund to which appellees were contributors. I do not think there is any merit in the contention that the demurrer should have been sustained on the ground that this is not such an interest as would entitle

appellee to maintain this suit, because practically every authority that I have been able to find holds that the donor or creator of the charity has the right to maintain a suit to enforce its proper execution.   22 Ency. Pl. & Pr., chap-ter on Trusts and Trustees.

ETHRIDGE, J., delivered the opinion of the court.

W. R. Scott, Dr. J. K. Crowder, and J. B. Scott, as in-dividuals, and W. R. Scott, Dr. J. K. Crowder, and George Johnson, as trustees of Pine Chapel Methodist Episcopal Church, filed a bill in the chancery court against the Freed-man's Aid & Southern Education Society, a corporation under the laws of the state of Ohio, alleging that prior to the 29th day of March, 1890, there was located on lands described in the bill at Clarkson, Webster county, Miss., an unincorporated school known as the "Woodland Aca-demy," run and operated under the auspices of the Metho-dist Episcopal Church: that said school was operated for the benefit of and was patronized by the people living near the same; that people living near the said school together with the officers and societies of the Methodist Episcopal Church, desiring to place the said school on a more per-manent basis and give it a source of income, made volun-tary contributions for the purpose of buying the land to give the school a more permanent source of income; that the complainants George Johnson and J. B. Scott con-tributed to said fund, and Rev. Levi Crowder, the father of Dr. J. K. Crowder, contributed to the fund, and the said George Johnson lived near the said land and was a patron of the said Woodland Academy, and is now entitled to have the revenue from said land used for the purpose of maintaining a school thereon; that Pine Chapel Metho-dist Episcopal Church, through its trustees, was a contri-butor to the said fund, and that Dr. J. K. Crowder and W. R. Scott are now trustees of the said church; that said fund was placed in the hands of W. F. Mallalieu, a bishop of the Methodist Episcopal Church, for the purpose of purchasing the said land; that said W. F. Mallalieu

purchased and conveyed to the said defendant in trust for
the use and benefit of said Woodland Academy certain
lands specifically described in the bill, a copy of the said
deed being made an exhibit to the said bill and hereafter
referred to; that he also, with some of the fund contribu-
ted, purchased and had conveyed to the defendant by L.
D. Yates certain described lands, and that the trustees of
Pine Chapel Methodist Episcopal Church conveyed to the
defendant on April 28, 1890, in trust for the Woodland
Academy, ten acres of land also destribed in the bill; that,
in pursuance of the terms and conditions of the said trust
deeds, and said Woodland Academy was operated and
maintained for the use of children living near the same
until November 2, 1899, on which date the defendant ex-
ecuted a lease to the Woman's Home Missionary Society
of the Methodist Episcopal Church, also an Ohio corpora-
tion, to the said school and land for a term of ninety-nine
years on condition that the said Woman's Home Mission-
ary Society would maintain a school on said land for the
instruction of youth, and that said lease would be void if
said Woman's Home Missionary Society should fail for
the space of one year to keep on said premises an academy
or school for the instruction of youth; that said Woman's
Home Missionary Society, in pursuance of said lease, con-
ducted a school known as the "Bennett Academy" on said
land until May, 1914, when it abandoned the said prem-
ises, and has not since attempted to maintain a school;
that after the expiration of one year from said abandon-
ment said lease became void, and that it became the duty
of the defendant, as the trustee of said property, to take
possession of said land and use the revenues therefrom for
the purpose of maintaining a school thereon, and that the
complainants, as patrons of the said school, and as con-
tributors to said fund, are entitled to have the revenue of
said lands used for the maintenance of a school thereon;
that the defendant has failed and refused to carry out the
terms and conditions of the trust deeds, and has refused
to use the revenues from said lands to maintain a school

thereon, but is undertaking to divert said trust estate to other and different purposes.

It is further alleged that the land is valuable, and, if used in a businesslike way, that the revenue therefrom would go far towards the maintenance of a school, that there is located on said land a good two-story school building and other buildings that could be used for the maintenance of said schools, and the bill prayed for a decree requiring the defendant to use said lands so as to produce the greatest amount of revenue therefrom, and to use said revenue for the maintenance of the school to which the complainants may send their children according to the terms and conditions of the said trust, and according to the intention and purposes of the contributors to said fund from which said estate was created; and, in case of failure or refusal to comply with said decree, that the defendant be removed as trustee, and that the court should appoint other trustees for the purpose of carrying out the said trust.

The deeds made exhibit to the bill contain the following expressions which are relied on for the trust features involved in the bill:

"Do hereby convey to the Freedman's Aid & Southern Educational Society of the Methodist Episcopal Church [describing the property] in trust, for the use and benefit of Woodland Academy as the society by its proper officers may deem best."

The contract of lease between the defendant and the Woman's Home Missionary Society of the Methodist Episcopal Church, a corporation under the laws of the state of Ohio, leased the land described and provided that the lessees shall pay rent, taxes, and assessments and not suffer any waste, and shall perpetually maintain on said premises an academy or school for the instruction of youth, etc. It is then provided as follows:

"That if said rent and any taxes and assessments that may be levied upon said premises, or upon any part thereof, shall remain unpaid for one year after the same shall

become due, and without demand made therefor, or if said lessee shall abandon said premises, or any part thereof, or if said lessee's interest therein shall be sold under execution, or any other legal process, without the written consent of said lessor, its successors or assigns, or if said lessee shall fail for the space of one year to keep on said premises an academy or school for the instruction of youth, or if said lessee shall fail to keep any of its covenants and agreements in this lease contained, then and in such case it shall be lawful for said lessor, its successors and assigns, into said premises to re-enter, and the same to have again, repossess, and enjoy, as in its first and former estate; and thereupon this lease and everything herein contained on the said lessor's behalf to be done and performed shall cease, determine, and be utterly void."

A demurrer was interposed to this bill setting forth numerous grounds, among which are: That there is no equity in the bill; that complainants do not show how they are interested in the subject-matter of this suit; that the complainants fail to show that they have any interest in the subject-matter of this suit which a court of equity can enforce or protect; that it appears on the face of the bill that complainants are not proper parties to the bill; that the bill does not allege that the defendant has breached any contract made by it with the complainants; that no one is complaining in this suit who has any legal or equitable right to complain; that it is not shown that the complainants were parties to the lease between the Woman's Home Missionary Society and the defendant; that the bill shows on its face that the defendant is authorized to use the lands mentioned as defendant as its proper officers might deem best. This demurrer was overruled, and an answer was filed and evidence taken.

It appears from the evidence on the trial that some of the complainants contributed five dollars, which was turned over to W. F. Mallalieu, and it was shown that some parties in the community helped cut lumber and do the work of building the schoolhouse. It was further shown

in the evidence that the purpose in making the deeds was to induce the defendant to finance the school, and that it did conduct a school for a period of about nine years, when it leased the premises as above stated.

. Neither Yates nor his heirs were made parties to the suit either complainant or defendant; neither were Mallalieu or his heirs made parties complainant or defendant; neither is the Woman's Home Missionary Society made a party to the suit, but the evidence shows that this organization moved its school from Clarkson, Miss., to Mathiston, Miss., and moved one of the school buildings to that point, where it is conducting a school.

It will be noted from the statement that the bill and the deeds called trust deeds do not show any particular thing that was to be done by the defendant in operating the school. The trust is made to an unincorporated school. If such school is a legal entity at all it must be so because it has trustees who represent it. If there is any trust it is for the benefit of this school, and the instrument relied on nowhere imposes any obligation on the school to receive the complainants or their children as students therein. If there is no specific trust involved in the deeds, which there is not, and if there is no person or legal entity representing a person existing for whose benefit the land was conveyed, there could be no trust, because the law requires a trust of this kind to be in writing. If there is any trust at all, it must be a trust for the benefit of the trustees of the Woodland Academy.

In our opinion the demurrer to the bill should have been sustained. The bill states no right of action in the complainants and does not make a case warranting the interference of a court in their behalf. The allegations of the bill are wholly insufficient to create any right in the complainants, and it was error for the court to enter a decree in their behalf.

*Reversed and dismissed.*